E-Filed July 15, 2008

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA
# WESTERN DIVISION

| | |
|---|---|
| Gregory Scott Del Amo,<br><br>    Plaintiff,<br><br>vs.<br><br>Norman Baccash, et al.<br><br>    Defendants. | CASE NO. CV 07-663 PSG (JWJx)<br><br>FINDINGS OF FACT AND<br>CONCLUSIONS OF LAW<br>FOLLOWING COURT TRIAL |

I.  BACKGROUND

    Gregory Scott Del Amo ("Del Amo") brought a lawsuit against Norman Baccash ("Baccash"), and No Cash, Inc. ("No Cash" and together with Baccash, "Defendants"). Del Amo alleged that Defendants misappropriated his fourteen copyrighted photographs of adult entertainers and used the photographs on Defendants' website to promote Defendants' on-line adult video rental business. Del Amo brought causes of action for (1) copyright infringement, (2) misappropriation of a person's photograph and/or likeness under Cal. Civ. Code § 3344, (3) misappropriation of a person's photograph and/or likeness under

1  common law, (4) unjust enrichment, and (5) unfair competition pursuant to Cal.

2  Bus. & Prof. Code § 17200 et seq.

3      On March 14, 2008, the Court issued a summary judgment ruling that

4  found that Baccash was vicariously liable for copyright infringement of Del

5  Amo's fourteen photographs.[1] The Court further found that Del Amo's claim for

6  misappropriation under Cal. Civ. Code § 3344 was partially preempted.

7  Specifically, the Court found that Del Amo's Cal. Civ. Code § 3344 claim was

8  preempted with regard to misappropriation of Del Amo's photographs.

9  However, to the extent that Del Amo's Cal. Civ. Code § 3344 claim was based

10  on a misappropriation of the models' likenesses, it was not preempted.

11      On March 28, 2008, the Court clarified the summary judgment ruling and

12  stated that No Cash, Inc., as owner of the Bush DVD website, was directly liable

13  for copyright infringement of Del Amo's photographs.

14      Then, on April 1, 2008, a two day court trial on Del Amo's damages

15  commenced.  At the beginning of the trial, the Court further clarified the

16  summary judgment holding regarding Del Amo's Cal. Civ. Code § 3344 claim.

17  The summary judgment ruling had stated that Del Amo was required to prove

18  that Defendants (1) knowingly used the models' likenesses, (2) for purposes of

19  advertising merchandise, (3) without Del Amo's prior consent.  The Court

20  clarified its summary judgment holding by stating that Del Amo's proof of

21  Defendants' knowledge was only required to prove knowing use of the models'

22  likenesses and not also knowing use without Del Amo's prior consent.

23      Also at the beginning of trial, Del Amo agreed to withdraw his third

24  through fifth claims for (1) misappropriation of a person's photograph and/or

25  likeness under common law, (2) unjust enrichment, and (3) unfair competition

26

27      [1] The Court will not repeat the facts of Defendants' infringement of Del Amo's

28  copyrighted adult entertainment photographs here.

1    pursuant to Cal. Bus. & Prof. Code § 17200 et seq.  Del Amo also agreed that he

2    was not seeking a punitive damages recovery and only sought Defendants'

3    profits from the infringement, statutory damages, costs, and attorney's fees.

4    Thus, trial issues were limited to certain copyright infringement damages and

5    damages under Del Amo's Cal. Civ. Code § 3344 claim.

6           The Court now issues its Findings of Fact and Conclusions of Law in this

7    Order.

8    II.    LEGAL STANDARD

9           A.    Findings of Fact and Conclusions of Law in a Court Trial

10          Federal Rule of Civil Procedure 52(a)(1) states that "[i]n an action tried on

11   the facts without a jury or with an advisory jury, the court must find the facts

12   specially and state its conclusions of law separately.  The findings and

13   conclusions may be stated on the record after the close of the evidence or may

14   appear in an opinion or a memorandum of decision filed by the court.  Judgment

15   must be entered under Rule 58." Fed. R. Civ. P. 52(a)(1).

16   III.   FINDINGS OF FACT

17          A.    Del Amo's Copyright Damages

18                1.    Nature of Defendants' Infringing Use

19          At trial, Del Amo entered into evidence copies of thirteen of the fourteen

20   photographs that Defendants infringed.[2]  The Court addressed these photographs

21   on summary judgment and noted that these photographs were grouped in four

22   series according to the featured model and called: "Alaurahallfem 024,"

23   "Alaurahallfem 027," "Alaurahallfem 052," "Bellawall 048," "Bellawall 053,"

24   "Bellawall 082," "Jadecouch 016," "Jadecouch 039," "Jadecouch 052,"

25

26   _____

27         [2] On summary judgment, the Court found that Defendants infringed fourteen
     of Del Amo's photographs.  However at trial, "Bellawall 068" was not entered into
28   evidence.

1    "Jadecouch 062," "Jadecouch 077," "Jadecouch 084," and "Sunnyleonehall
2    015."  The photographs displayed four scantily clad models Alaura Eden,
3    Belladonna, Jade Hsu, and Sunny Leone in sexually suggestive poses.[3]

4         Defendants displayed these photographs in various ways on their
5    BushDVD website when the adult video rental business began operating on or
6    around early 2003.  Sunnyleonehall 015 was displayed on Defendants' landing
7    page, the first webpage that visitors see as they reach Defendants' website at
8    www.bushdvd.com.  Also, Jadecouch 077 and Jadecouch 039 were displayed on
9    "Join Today" links.  Finally, enlargeable thumbnail versions of Bellawall 053,
10   Bellawall 048, Bellawall 082, Alaurahallfem 024, Alaurahallfem 027,
11   Alaurahallfem 052, Jadecouch 016, Jadecouch 052, Jadecouch 062, Jadecouch
12   077, and Jadecouch 084 were displayed in connection with various movies
13   featuring the models.[4]

14        However, despite Defendants' display of the infringed photographs,
15   internet users could not download or purchase any of the infringed photographs
16   from the Defendants' website.  Also, Defendants' website did not sell any
17   photographs or images and solely was in the business of adult video rentals.
18   Profits from the business resulted from collection of membership fees.  Internet
19   users wishing to rent videos from BushDVD were required to pay membership
20   fees to the website which allowed the users to "rent" videos.  Users were unable
21   to "rent" individual titles and were required to become members.

22        2.    Connection Between Defendants' Profits and the Infringing
23              Photographs

24

25

26   [3] The models used these aliases as their "print stage names."

27   [4] Also, Del Amo introduced evidence showing that Defendants' website
     displayed another photograph of Belladonna.  However, this photograph does not
28   correspond to any exhibit entered into evidence at trial.

Del Amo presented evidence of Defendants' gross revenues from the on-line adult video rental business during the time the infringed photographs were displayed. This evidence included Baccash's testimony and some documentary evidence, and the evidence demonstrated that Defendants' gross revenues during the infringing period were $5,000,000.00.

However, Del Amo presented no evidence that showed a causal link between Defendants' infringement of Del Amo's fourteen copyrighted photographs and Defendants' rental business profits. Del Amo presented no evidence that demonstrated that Defendants' display of the infringed photographs resulted in increased memberships in the BushDVD video rental website. Instead, the evidence showed that the fourteen infringing photographs were among over 50,000 photographs of over 20,000 adult performers displayed on the website. Del Amo presented no evidence that established that Defendants' display of the fourteen infringed photographs could be linked to any particular membership fees revenue.

Thus, Del Amo has not presented any evidence of direct profits attributable to the sale of his copyrighted photographs or pictures including portions of his photographs. Instead, Del Amo has only presented evidence of Defendants' indirect profits resulting from Defendants' display of photographs, some of which include Del Amo's photographs.

B.    Del Amo's Rights Under the Modeling Contracts

Del Amo also entered into evidence copies of the four modeling contracts under which the infringed photographs were originally produced. The contracts each contained, among others, the following assignments:

> Artist grants to producer, and all his assigns, the following perpetual and exclusive rights (1) to photograph or otherwise reproduce all or any part of the Artist's performances, acts, poses, plays and appearances of every kind and nature made or done by Artist in connection with the

5

1    picture (hereinafter the "performance") ...

2          Artist further grants to producer the perpetual but non exclusive

3    right to use, and to license others to use, Artist's name and biography and

4    reproductions of Artist's physical likeness and/or voice for the purposes of

5    advertising and exploiting any work embodying the performance ....

6    (Trial Exhs. 1, 6, 11, and 19). These assignments sufficiently conveyed to Del

7    Amo the models' publicity rights under Cal. Civ. Code § 3344 for the purposes

8    of advertising and exploiting any work embodying the models' performances.

9        C.    Defendants' Discovery Abuses

10       Also during the trial, the Court found that Defendants knowingly violated

11   this Court's orders and the Federal Rules of Civil Procedure by refusing to

12   produce financial records to Del Amo. These financial documents included,

13   among others, W-2 forms, Baccash's tax returns, the tax returns for No Cash,

14   Inc., and statistical documents from Yahoo and Google regarding web-site

15   traffic. The Court also determined that Defendants attempted to evade discovery

16   production duties by claiming that no General Ledger was maintained for No

17   Cash, Inc.'s accounting purposes and that no invoices were used by No Cash,

18   Inc. in its business.

19   IV.    CONCLUSIONS OF LAW

20       Del Amo withdrew all his claims except for his claims for copyright

21   infringement damages and damages under Cal. Civ. Code § 3344. The Court

22   now addresses these two remaining claims.

23       A.    Copyright Damages

24   Within the Copyright Act, 17 U.S.C. § 504(b) provides that

25   [t]he copyright owner is entitled to recover the actual damages suffered by

26   him or her as a result of the infringement, and any profits of the infringer

27   that are attributable to the infringement and are not taken into account in

28   computing the actual damages. In establishing the infringer's profits, the

1   copyright owner is required to present proof only of the infringer's gross
2   revenue, and the infringer is required to prove his or her deductible
3   expenses and the elements of profit attributable to factors other than the
4   copyrighted work.
5   17 U.S.C. § 504(b).

6        The trial focused on the issue of copyright damages, and the central issue
7   that arises after the trial is whether copyright damages have been adequately
8   proven.  Del Amo argues that he has met his burden to prove copyright damages
9   because 17 U.S.C. § 504(b) and case law only requires to him to present proof of
10  the Defendants' gross revenue.  According to Del Amo, once he has met this
11  initial burden, the burden shifts to Defendants to prove their deductible expenses
12  and elements of their profits attributable to factors other than the copyrighted
13  work.  However, in opposition, Defendants argue that this case involves *indirect*
14  profits from copyright infringements, a fact overlooked by Del Amo.  Defendants
15  point out that Ninth Circuit case law requires Del Amo to prove a sufficient
16  causal nexus between the infringement of Del Amo's photographs and
17  Defendants' indirect profits.  Defendants rely on the language from 17 U.S.C. §
18  504(b) which states that a copyright owner is entitled to "any profits of the
19  infringer that are *attributable to* the infringement[.]"  17 U.S.C. § 504(b)
20  (emphasis added).

21       1.    Defendants' Argument Against Granting Indirect Profits
22       In *Mackie v. Rieser*, 296 F.3d 909, 914 (9th Cir. 2002), the Ninth Circuit
23  decided a copyright infringement lawsuit based on reasoning that supports
24  Defendants' argument.  In *Mackie*, Seattle commissioned plaintiff Mackie in
25  1979 to create a public art exhibit called "The Dance Steps."  Mackie created art
26  that depicted the basic steps of various popular dances, and his art consisted of
27  footsteps cast in bronze and embedded in sidewalks in Seattle's Capitol Hill
28  neighborhood.  One of these art pieces was entitled "The Tango," and depicted

7

1    steps and movements associated with the popular Argentinian dance.  Then, in
2    1995, the defendant Seattle Symphony Orchestra Public Benefit Corporation (the
3    "Symphony") commissioned a graphic artist, defendant Rieser, to help design its
4    direct-mail subscription campaign promotional materials.  Rieser created a
5    collage that included a photographed image of "The Tango," among other
6    images, and the Symphony incorporated Rieser's collage into brochures that
7    were mailed to 150,000 people across the United States to promote its "Pops"
8    performance series.  After discovering the unauthorized use of "The Tango,"
9    Mackie brought suit against the Symphony and Rieser for copyright infringement
10   damages.

11          The Ninth Circuit found that *Mackie* involved a case of "indirect"
12   copyright profits that could not be granted to Mackie because he failed to
13   establish a sufficient causal link between the defendants' infringing activities
14   and their profits.  The Ninth Circuit explained that, under Section 504(b) of the
15   Copyright Act,

16          [t]he copyright owner is entitled to recover the actual damages suffered by
17          him or her as a result of the infringement, and *any profits of the infringer*
18          *that are attributable to the infringement* and are not taken into account in
19          computing the actual damages. ...

20   *Mackie*, 296 F.3d at 914 (emphasis in original).  Furthermore,

21          [o]n its face, § 504(b) does not differentiate between "direct profits" -
22          those that are generated by selling an infringing product - and "indirect
23          profits" - revenue that has a more attenuated nexus to the infringement.
24          Nor does it discuss whether tort principles, such as causation, should play
25          a role in determining whether the infringer's profits were a result of the
26          infringing act.  Nevertheless, in our prior decisions, we have held that a
27          copyright holder must establish the existence of a causal link before
28          *indirect* profits damages can be recovered.

8

1    *Id.* (emphasis added).  The Ninth Circuit traced its jurisprudence that allowed a
2    copyright infringement plaintiff to recover indirect profits damages to "the
3    seminal case of *Frank Music Corp. v. Metro-Goldwyn-Mayer, Inc.*, 772 F.2d
4    505, 517 (9th Cir. 1985) ('*Frank I*')".  In the Ninth Circuit's discussion of *Frank*
5    *I*, the court stated that

6           [a]lthough *Frank I* does not attempt to define specifically the requisites for
7           recovery of indirect profits damages, it did set forth general specifications
8           to guide the inquiry.  Notably, we held that a district court could preclude
9           recovery of a defendant's profits if they are only remotely or speculatively
10          attributable to the infringement. ... In the same vein, we stated that in a
11          copyright action, a trial court is entitled to reject a proffered measure of
12          damages if it is too speculative.

13   *Mackie*, 296 F.3d at 914-15 (internal alterations, quotation marks, and citations
14   omitted).  In summary, the Ninth Circuit held that "to survive a summary
15   judgment motion on a demand for indirect profits pursuant to § 504(b), a
16   copyright holder must proffer sufficient non-speculative evidence to support a
17   causal relationship between the infringement and the profits generated indirectly
18   from such an infringement."  *Id.* at 915-16.  Applying its reasoning to the facts of
19   the *Mackie* case, the Ninth Circuit found that Mackie failed to produce sufficient
20   non-speculative evidence to create a triable issue of fact on the indirect profits
21   damages issue.  The Ninth Circuit noted that Mackie's own expert stated "that he
22   could not 'understand' how it would be possible to establish a causal link
23   between the Symphony's infringing use of 'The Tango' and any Pops series
24   revenues generated through the inclusion of the collage in the direct-mail
25   literature[,]" and the Ninth Circuit agreed with the expert's opinion.  *Id.* at 916.
26          After *Mackie*, the Ninth Circuit reiterated its standard for proving indirect
27   profits damages for copyright infringements in *PolarBear Productions, Inc. v.*
28   *Timex Corp.*, 384 F.3d 700 (9th Cir. 2004).  The Ninth Circuit explained that "§

504(b) creates a two-step framework for recovery of indirect profits: 1) the copyright claimant must first show a causal nexus between the infringement and the gross revenue; and 2) once the causal nexus is shown, the infringer bears the burden of apportioning the profits that were not the result of infringement." *Id.* at 711. "[A] copyright owner is required to do more initially than toss up an undifferentiated gross revenue number; the revenue stream must bear a legally significant relationship to the infringement.[] The result is that a plaintiff seeking to recover indirect profits must 'formulate the initial evidence of gross revenue duly apportioned to relate to the infringement.' 4 NIMMER ON COPYRIGHT § 14.03[B], 14-39." *PolarBear Productions*, 384 F.3d at 711 (footnote citing to Second and Fourth Circuit cases in agreement omitted).  Applying the *Mackie* standard, the *PolarBear Productions* court found that expert testimony that 10% to 25% of trade shows sales resulted from excitement created by a trade show booth promotion featuring the infringing copyrighted material was sufficient to establish the causal nexus for recovery of indirect profits damages, where the expert's opinion was based on his experience in evaluating trade shows.

In this case, Del Amo seeks to recover Defendants' indirect profits.  Del Amo claims that Defendants experienced increased membership revenues in Defendants' on-line video rental service because Defendants displayed Del Amo's copyrighted photographs on Defendants' website, without Del Amo's permission.  Because of this infringement, Del Amo seeks to recover Defendants' profits from the increase in membership revenues.  These membership revenues are indirect profits that may be partially due to Defendants' display of Del Amo's photographs.  However, these profits are not direct profits because the profits do not result from the sale of Del Amo's copyrighted photographs or pictures containing portions of Del Amo's photographs.

Following *Mackie* and *PolarBear Productions*, Del Amo has failed to

establish the required nexus between Defendants' infringing activities and their indirect profits. Del Amo has submitted no expert testimony that helps prove that Defendants' display of Del Amo's photographs resulted in increased membership revenues. Instead, Del Amo merely provided argument that Defendants' display of Del Amo's photographs must have resulted in increased membership fees. Del Amo argues that "Defendants' use of the Del Amo Photographs is inextricably connected to BushDVD's revenues in that those photographs were specifically used to draw customers to the website." (Plaintiff's Closing Trial Brief, p. 12, lines 3-5.) In support of this argument, Del Amo claims that Defendants "admitted that the adult DVD industry was 'all visual' (and reliant on 'pretty faces') and that photographs were required to sell BushDVD's services and attract subscribers to the website." (Id., lines 13-16.) However, Del Amo never provided evidence that connected Defendants' display of the infringed photographs, among many other photographs displayed, to Defendants' membership fees profits. Failing the standard from *PolarBear Productions*, Del Amo did not "formulate the initial evidence of gross revenue duly apportioned to relate to the infringement" and merely "toss[ed] up an undifferentiated gross revenue number." *PolarBear Productions*, 384 F.3d at 711.

> 2.     Del Amo's Argument for an Award of Defendants' Profits

Ignoring the more recent cases differentiating between direct and indirect copyright infringement profits, Del Amo relies on *Three Boys Music Corp. v. Bolton*, 212 F.3d 477 (9th Cir. 2000), *cert. denied*, 531 U.S. 1126, 121 S. Ct. 881, 148 L. Ed. 2d 790 (2001) to support his argument. In that case, rhythm and blues recording artists, the Isley Brothers, won a copyright infringement lawsuit for infringement of their song, "Love is a Wonderful Thing" against Michael Bolton, his collaborator, Andrew Goldmark, and their record companies ("Sony Music"). On appeal from the district court's finding of infringement, the Ninth

Circuit considered the question of attribution of profits.  The Ninth Circuit
explained that

> [a] successful copyright plaintiff is allowed to recover only those profits
> that are "attributable to infringement." 17 U.S.C. § 504(b) (1994). "In
> establishing the infringer's profits, the copyright owner is required to
> present proof only of the infringer's gross revenue, and the infringer is
> required to prove his or her deductible expenses and the elements of profit
> attributable to factors other than the copyrighted work." *Id.  See also*
> *Cream Records, Inc. v. Jos. Schlitz Brewing Co.*, 754 F.2d 826, 828 (9th
> Cir. 1985) (holding that when all profits do not clearly derive from the
> infringing material, the copyright owner is not entitled to recover all of the
> profits); *Gaste*, 863 F.2d at 1070 (finding that where there is "imprecision
> in the computation of expenses, a court should err on the side of
> guaranteeing the plaintiff a full recovery"). Thus, the statutory burden of
> proof lies with Sony Music to prove what percentage of their profits were
> not attributable to copying the Isley Brothers' "Love is a Wonderful
> Thing."

*Three Boys Music*, 212 F.3d at 487.  The Ninth Circuit further considered the
evidence to support apportionment presented and stated that

> Sony Music presented evidence that Bolton's "Love is a Wonderful
> Thing" produced only 5-10% of the profits from his album, "Time, Love
> and Tenderness," and that the song's infringing elements resulted in only
> 10-15% of the profits from the song.  The Isley Brothers, however,
> attacked the credibility of one of Sony Music's experts.  Furthermore, they
> presented evidence that Bolton's infringing song was the album's lead
> single, that it was released 19 days before the album, and that Bolton
> engaged in telephone promotion of the song.  The jury found that 28% of
> the album's profits derived from the song, and that 66% of the song's

1  profits resulted from infringing elements.

2  *Id.* The Ninth Circuit upheld the jury's apportionment and stated that "[w]e

3  affirm the jury's apportionment of the profits for several reasons. First, the jury

4  instructions adequately conveyed the burden of proof. Second, the burden of

5  proof was on Sony Music, and the jury chose not to believe Sony Music's expert.

6  Finally, a jury verdict apportioning less than 100% of the profits but more than

7  the percentage estimates of Sony Music's experts does not represent clear error."

8  *Three Boys Music*, 212 F.3d at 487.

9      Del Amo claims that *Three Boys Music* supports his argument that

10  Defendants bear the burden of proving an appropriate apportionment of profits

11  after Del Amo establishes Defendants' gross revenues. Del Amo relies on the

12  Ninth Circuit's statement that the burden to establish an appropriate

13  apportionment lies with the Defendants. *Id.*

14      However, *Three Boys Music* is inapposite to the present case. *Three Boys*

15  *Music* involved a case where the copyright infringers were found to have directly

16  copied portions of the Isley Brothers' song. The profits from the infringement

17  were direct profits resulting from the sale of the infringers' song containing the

18  copied portions. Thus, the apportionment in *Three Boys Music* separated direct

19  profits due to the copied song portions and the infringers' profits resulting from

20  no infringement. In the present case, *indirect* profits are at issue, and Del Amo

21  has failed to meet his evidentiary burden to establish that he is entitled to

22  Defendants' *indirect* profits.

23      Del Amo also cites *Nintendo of America, Inc. v. Dragon Pacific Intern.*,

24  40 F.3d 1007, 1012 (9th Cir. 1994), *cert. denied*, 515 U.S. 1107, 115 S. Ct. 2256,

25  132 L. Ed 2d 263 (1995) for the proposition that "where infringing and

26  noninfringing elements of a work cannot be readily separated, all of a

27  defendant's profits should be awarded to a plaintiff." However, *Nintendo* is also

28  inapposite because the Ninth Circuit's quoted language refers to a trademark

13

infringement rather than a copyright infringement, and furthermore, the Ninth Circuit did not consider the difference between direct and indirect profits for copyright infringements.

In summary, the Court concludes that Del Amo has failed to meet his evidentiary burden to establish that he is entitled to Defendants' indirect profits from their infringement of Del Amo's fourteen copyrighted photographs, the only copyright infringement profits at issue in this case.

B.     Damages Under Cal. Civ. Code § 3344

1.     Validity of Del Amo's Cal. Civ. Code § 3344 Claim

The Court previously addressed Del Amo's claims under Cal. Civ. Code § 3344 in its March 14, 2008 summary judgment order, and some of that discussion bears repeating here.

California Civil Code § 3344(a) states:

> Any person who knowingly uses another's name, voice, signature, photograph, or likeness, in any manner, on or in products, merchandise, or goods, or for purposes of advertising or selling, or soliciting purchases of, products, merchandise, goods or services, without such person's prior consent, ... shall be liable for damages sustained by the person or persons injured as a result thereof.

Cal. Civ. Code § 3344(a).

Furthermore, citing a California appellate decision, the Ninth Circuit has recognized that there are additional requirements to establish a Section 3344 claim and has stated that

> Section 3344(e) modifies Section 3344(a) liability for misappropriation: "The use of a name ... or likeness in a commercial medium shall not constitute a use for which consent is required ... solely because the material containing such use is commercially sponsored or contains paid advertising. Rather it shall be a question of fact whether or not the use of

14

the person's name ... or likeness was so directly connected with the commercial sponsorship or with the paid advertising as to constitute a use for which [non-consent is actionable]." The statutory cause of action consists of the same elements as a common law cause of action plus two additional ones. The plaintiff must prove a knowing use of his name or likeness for "purposes of advertising or soliciting purchases," and a direct connection "between the use and the commercial purpose."

*Newton v. Thomason*, 22 F.3d 1455, 1460 f.n. 5 (9th Cir. 1994) (*citing Eastwood v. Superior Court*, 149 Cal. App. 3d 409, 417-18, 108 Cal. Rptr. 342 (1983), *cert. denied*, 508 U.S. 951, 113 S. Ct. 2443, 124 L. Ed. 2d 660 (1983)).

In addition, the Ninth Circuit has recognized that, in some circumstances, a Section 3344 claim is preempted by the Copyright Act. The Ninth Circuit has explained that it has "adopted a two-part test to determine whether a state law claim is preempted by the [Copyright] Act. [A court] must first determine whether the 'subject matter' of the state law claim falls within the subject matter of copyright as described in 17 U.S.C. §§ 102 and 103. Second, assuming that it does, [a court] must determine whether the rights asserted under state law are equivalent to the rights contained in 17 U.S.C. § 106, which articulates the exclusive rights of copyright holders." *Laws v. Sony Music Entertainment, Inc.*, 448 F.3d 1134, 1137-38 (9th Cir. 2006), *cert. denied*, 127 S. Ct. 1371, 167 L. Ed. 2d 159 (2007) (internal citations omitted).

At summary judgment, the Court determined that Del Amo's Section 3344 claim is preempted by the Copyright Act to the extent that Del Amo's claim is based solely on the photographs at issue; however, the Court also found that Del Amo's Section 3344 claim arising from a right of publicity based the models' likenesses is not preempted. "A person's name or likeness is not a work of authorship within the meaning of 17 U.S.C. § 102. This is true notwithstanding the fact that [models'] names and likenesses are embodied in a copyrightable

15

1  photograph." *Downing v. Abercrombie & Fitch*, 265 F.3d 994, 1004 (9th Cir.

2  2001). *See also KNB Enterprises v. Matthews*, 78 Cal. App. 4th 362, 374-75, 92

3  Cal. Rptr. 2d 713 (2000). Thus, because the models' likenesses are non-

4  copyrightable, the Copyright Act does not preempt Del Amo's claim based on

5  the models' likenesses.

6       Further, the Court found that there was a triable issue of fact regarding Del

7  Amo's Section 3344 claim based on the models' likenesses. The Court

8  determined that Del Amo failed to show that Defendants (1) knowingly used the

9  models' likenesses, (2) for purposes of advertising merchandise, (3) without Del

10 Amo's prior consent. The Court found that there was a question concerning

11 whether Del Amo thought he had consent to use the copyrighted photographs.

12 However, at the beginning of trial on April 1, 2008, the Court clarified that the

13 "knowing" requirement under Section 3344 applies only to the use of the

14 models' likenesses and not the use of the models' likenesses without consent.

15      Presently, Del Amo claims that he has proven Defendants' violation of

16 Section 3344 and that he has standing to bring claims on behalf of the models to

17 recover for Defendants' violations. Del Amo argues that the models assigned

18 their publicity rights to him under their modeling contracts, and therefore, he has

19 a right to bring a Section 3344 claim, standing in their shoes. To prove the

20 assignment of the models' rights to him, Del Amo submitted into evidence the

21 contracts under which the models allegedly assigned their rights to Del Amo.

22      Here, Del Amo has proven the elements of a Section 3344 violation. Del

23 Amo has established that Defendants (1) knowingly used the models' likenesses,

24 (2) for purposes of advertising merchandise, (3) without Del Amo's prior

25 consent.[5] Additionally, Del Amo has established that Defendants knowingly

26

27      [5] In their closing trial brief, Defendants again argue that the "knowing"

28 requirement applies both to knowing use of the photographs and knowing use without

16

1   used the models' photographs for "purposes of advertising or soliciting"

2   customers to become members of their on-line business. *Newton*, 22 F.3d at

3   1460 f.n. 5.  Del Amo has also established that there was a "direct connection"

4   between Defendants' display of the models' photographs and Defendants'

5   commercial purpose of promoting their on-line video rental business. *Id.*  To

6   defeat Del Amo's claim, Defendants argue that Del Amo has no standing to

7   assert the models' right of publicity claim under Section 3344 because the

8   models cannot assign the right to Del Amo.  However, in a factually similar case,

9   a California appellate court has ruled that the right of publicity is assignable for

10  purposes of a Section 3344 claim. *See KNB Enterprises*, 78 Cal. App. 4th at 365

11  f.n. 2, 92 Cal. Rptr. 2d 713 (2000) (*citing Lugosi v. Universal Pictures*, 25 Cal.

12  3d 813, 820, 160 Cal. Rptr. 323 (1979)).  Also, the assignment contracts

13  effectively assign the models' publicity rights in the photographs to Del Amo.

14  The models' contracts state that "Artist further grants to producer the perpetual

15  but non exclusive right to use, and to license others to use, Artist's name and

16  biography and reproductions of artist's physical likeness ... for the purposes of

17  advertising and exploiting any work embodying the performance ...."  (Trial

18  Exhs. 1, 6, 11, and 19).  The contractual assignments are sufficiently broad to

19  assign the models' rights of publicity under Section 3344.

20          2.      Del Amo's Recovery Under Cal. Civ. Code § 3344

21          Regarding a successful plaintiff's recovery, Cal. Civ. Code § 3344 states:

22   _____

23  consent.  However, the Court has clarified its ruling to reject this argument.  While

24  mistake and inadvertence could have been defenses to the Section 3344 claim in this
    case, the mistake and inadvertence would have related to the use of the photograph.

25  In other words, Defendants could have defended the Section 3344 claim by showing

26  that they mistakenly used Del Amo's photographs while intending to use other
    photographs. However, Defendants cannot defend the present Section 3344 claim by

27  showing that they mistakenly thought they had consent to use Del Amo's

28  photographs.

in any action brought under this section, the person who violated the section shall be liable to the injured party or parties in an amount equal to the greater of seven hundred fifty dollars ($750) or the actual damages suffered by him or her as a result of the unauthorized use, and any profits from the unauthorized use that are attributable to the use and are not taken into account in computing the actual damages.  In establishing such profits, the injured party or parties are required to present proof only of the gross revenue attributable to such use, and the person who violated this section is required to prove his or her deductible expenses.  Punitive damages may also be awarded to the injured party or parties.  The prevailing party in any action under this section shall also be entitled to attorney's fees and costs.

Cal. Civ. Code § 3344(a).

However, despite Del Amo's success in establishing Defendants' violation of Section 3344, Del Amo has not submitted adequate proof of actual damages or Defendants' profits that are attributable to their violation.  Del Amo submitted no proof of any actual damages he might have sustained and thus cannot recover actual damages under the statute.  Also, as with Del Amo's copyright infringement claims, Del Amo has not established that Defendants' profits are "attributable" to the Defendants' violation of Section 3344.  Thus, Del Amo may not recover Defendants' gross profits for Defendants' violations.  However, pursuant to the statute, Del Amo may recover $10,500 (14 x $750) for Defendants' misappropriations of the models' publicity rights through Defendants' display of Del Amo's fourteen photographs of the models.  Del Amo is entitled to recover $750 for Defendants' misappropriations through use of each of the fourteen photographs because the misappropriations each could have presented a separate cause of action.  *See Miller v. Collectors Universe, Inc.*, 159 Cal. App. 4th 988, 999-1008, 72 Cal. Rptr. 3d 194 (2008).

1    Furthermore, as the prevailing party on Section 3344 claim, Del Amo is

2  entitled to attorney's fees and costs in bringing the claim.  Del Amo may submit

3  a motion for attorney's fees based on Section 3344.

4        C.    Permanent Injunction

5    Under the Copyright Act, 17 U.S.C. §§ 502(a) and 503(b), the Court can

6  issue a permanent injunction and order the return of infringed works to prevent

7  future infringement by Defendants.  Because the Court has determined that

8  Defendants infringed Del Amo's fourteen copyrighted photographs, the Court

9  orders Defendants to return any and all copies of the infringed photographs

10  within their possession to Del Amo.  Furthermore, the Court permanently enjoins

11  Defendants from future infringement of Del Amo's photographs.

12  V.    CONCLUSION

13    The Court enters its Findings of Fact and Conclusions of Law as stated

14  above.  The Court awards Del Amo $10,500 for Defendants' violations of Cal.

15  Civ. Code § 3344.  Del Amo may submit a motion for attorney's fees as the

16  prevailing party in this action.  Furthermore, the Court permanently enjoins

17  Defendants from future infringement of Del Amo's photographs and orders

18  Defendants to return any and all copies of the photographs within their

19  possession to Del Amo.

20    The Court orders Del Amo to submit a proposed judgment within 14 days

21  from the date of entry of these Findings of Fact and Conclusions of Law.

DATE:  July 15, 2008

PHILIP S. GUTIERREZ
United States District Judge